## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    v.

JANET WEST BUHLER,

      Defendant.

Criminal Action No. 21-510 (CKK)

### MEMORANDUM OPINION AND ORDER
(May 26, 2024)

Pending before this Court are Defendant Janet Buhler's [42] Motion for Early Termination of Probation and for Return of Passport ("Def.'s Mot."); a United States Probation Office [44] Memorandum ("Prob. Mem."), which responds to Defendant's request for early termination; and the Government's [45] Memorandum in Opposition to Defendant's Motion for Early Termination of Probation ("Govt. Opp'n"). Upon review of the pleadings, the relevant legal authorities, and the entire record, this Court DENIES Defendant Janet Buhler's Motion for Early Termination of Probation and DEFERS to the supervising Probation Office (and its policies) regarding the Return of Defendant's Passport.[1]

### I. BACKGROUND

On January 13, 2022, Ms. Buhler pleaded guilty to one count of Parading, Demonstrating,

---

[1] Defendant resides in Utah and is supervised by the Probation Office in Salt Lake City, Utah. Defendant indicates that she and her husband intend to travel to London for her husband's business and to attend a family wedding, with Defendant intending to spend a few days in Paris to fabric shop for her fabric brand. The entire trip will be two weeks, and an itinerary will be provided to the Probation Office. Def.'s Mot., ECF No. 42, at 1 n.1. The Government defers to the United States Probation Office on the return of Defendant's passport. Govt. Opp'n, ECF No. 45, at 6. The Probation Office Memorandum provides no information responsive to Defendant's request for return of passport.

or Picketing in the Capitol Building, in violation of 20 U.S.C. §5104(e)(2)(G).  *See* Plea Agreement, ECF No. 26.  In connection with the January 6, 2021 riot, Ms. Buhler entered the United States Capitol Building at approximately 2:25 p.m. on that date, and she walked through the Crypt, and then through the Rotunda, where she "observed rioters violently break through the East Rotunda Doors, which were being manned by U.S. Capitol Police officers."  Statement of Offense, ECF No. 25, ¶¶ 8-9.  Buhler "cheered and applauded when the rioters eventually broke through the East Rotunda Doors." *Id.* at ¶ 9.  Ms. Buhler then proceeded to the Senate Gallery and stayed for a few minutes before exiting the Capitol Building at approximately 2:53 p.m.  *Id.* at ¶¶ 10-11.  Ms. Buhler knew at the time she entered the Capitol that she did not have permission to do so.  *Id.* at  ¶ 12.

On June 1, 2022, the Court sentenced Ms. Buhler to 30 days of incarceration, followed by 36 months of probation, with $500.00 in restitution.  *See* Judgment; ECF No. 39, at 2-3, 6.  Ms. Buhler's supervision commenced on September 8, 2022, and it is scheduled to terminate on September 17, 2025.  As special conditions of her supervision, Defendant must make financial disclosures and is subject to financial restrictions.  *Id.* at 5.  Ms. Buhler requests early termination of her probation after being on supervision for approximately 20 months; the Government opposes Defendant's request, and the Probation Office makes no recommendation.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c).  In considering early termination, courts must consider the factors set out in 18 U.S.C. §3553(a), to the extent they are applicable.  *Id.*; *see also United States v. Hartley*, 34 F.4th 919, 929-932 (10th Cir. 2022) (finding

that a district court must make individualized determinations based on the applicable statutory criteria before responding to a request to modify a sentence). Accordingly, pursuant to Section 3564(c), courts are permitted to terminate a term of probation early only if such early termination is warranted by "the interest of justice" and by the "conduct of the defendant," and it is consistent with the applicable §3553(a) factors. *United States v. Harrison*, No. 98-cr-235-RCL-5, 2021 WL 1820289, at *3 (D.D.C. May 6, 2021); *United States v. Ferrell*, 234 F. Supp. 3d 61, 63-64 (D.D.C. 2017) (same).

The §3553(a) factors to be considered by the Court with regard to a request for early termination of supervision are: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7).

## III. ANALYSIS

In this case, Defendant asserts that early termination of probation "is warranted by her good conduct, in the interest of justice and [warranted] because the D.C. Circuit held after this Court sentenced [her] that a sentence of incarceration and probation is an unlawful sentence." Def.'s Mot., ECF No. 42, at 2 (citing *United States v. Little*, 78 F.4th 453, 461 (D.C. Cir. 2023)). The Government argues that "[D]efendant has presented no justification for early termination other than mere compliance with the terms of her probation." Govt. Opp'n, ECF No. 45, at 1. Furthermore, the Government notes that this Court balanced the § 3553(a) factors at sentencing to

impose a sentence that included three years of probation, and accordingly, the Government concludes that these factors "continue to counsel in favor of the defendant completing her probationary term." *Id.*

## A. Defendant's Conduct

Ms. Buhler asserts that, since imposition of the period of probation, she has "had no violations, and has completed her special conditions of probation." Def.'s Mot., ECF No. 42, at 1. Defendant notes that her supervising probation officer has "indicated in an email that [she] has always been compliant." *Id.* at 2; *see also* Prob. Mem., ECF No. 44, at 2 ("the Supervising Officer reported that Ms. Buhler has been cooperative and responsive to Probation"). Defendant proffers that there is no indication she will reoffend as she has "completely distanced herself from politics and has not reengaged in any similar behavior." Def.'s Mot., ECF No. 42, at 2. Furthermore, she notes that she has completed almost two-thirds of her term of probation. *Id.*

The Government argues that "[c]ourts have routinely held that mere compliance with the conditions of probation without more does not warrant early termination." Govt. Opp'n, ECF No. 45, at 3; *see, e.g., United States v. Suarez*, 21-cr-205 (DLF), 11/9/23 Minute Entry ("As courts in this district have previously held, 'good behavior alone' is generally 'insufficient to warrant early termination' of probation.") (citing *United States v. Parker*, 219 F. Supp. 3d 183, 191 (D.D.C. 2016)); *United States v. Wesley*, 311 F. Supp. 3d 77, 81-82 (D.D.C. 2018) (Kollar-Kotelly, J.) (noting that "even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination"). The Government relies in part on a case that provides guidance "in the similar supervised release context[.]" Govt. Opp'n, ECF No. 45, at 3. In *United States v. Longerbeam*, 199 F. Supp. 3d 1 (D.D.C. 2016), the court explained that this circuit requires either "changed circumstances" or "something of an unusual or extraordinary

4

nature in addition to full compliance" to justify early termination of supervised release, or the exception would "swallow the rule." *Id.* at 2-3 (citations omitted); *United States v. Medina*, 17F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (same).

In the instant case, this Court finds that while Defendant's good conduct on supervision is commendable, such good conduct alone does not weigh in favor of early termination of probation. A defendant's "compliance with his probation conditions is commendable, but it is also expected." *United States v. Gionet*, No. 22-cr-132, ECF No. 88 at 2 (D.D.C. Feb. 9, 2024) (denying motion to terminate probationary term of unlawful split sentence); *see also United States v. Hemphill*, No. 21-cr-555, 2024 WL 578977, at *3 (D.D.C. Feb. 13, 2024) (denying motion to terminate probationary term of unlawful split sentence, noting that "adhering to the conditions of probation 'is not exceptional such that it requires early termination of probation' because doing so 'was ordered by the Court, and compliance is expected.'") Accordingly, Defendant's conduct in this case does not warrant early termination of probation.

## B. Section 3553(a) Factors

As a preliminary matter, this Court notes that the Section 3553(a) factors applicable to this Court's analysis are: (1) the nature and circumstances of the offense and Defendant's history and characteristics; (2) deterrence of criminal conduct; and (3) protection of the public from further crimes. Defendant proffers that these §3553(a) factors support early termination of probation insofar as Defendant "took seriously the terms of her probation and worked diligently to complete all of her court ordered requirements as well as payment of the $500 Restitution [.]" Def.'s Mot., ECF No. 42, at 3. "According to her probation officer, [Defendant] is in good standing with the probation office, has maintained a stable residence, reports as directed, [and] has no outstanding fines or fees." *Id.* at 3-4. Defendant continues to reside in Utah with her husband and to care for

family members.  *Id.* at 4; *see also* Prob. Mem., ECF No. 44, at 2 (Defendant "traveled to Idaho frequently to assist with her ailing mother for over the course of a year or so").

Defendant reports also that she has "successfully served almost two-thirds of her probation, which is the critical period during which most problems arise."  *Id.*  She notes that persons with a criminal history category one [like herself] had "the lowest re-arrest rates" when compared to offenders with prior criminal histories.  Def.'s Mot., ECF No. 42, at 4-5.  Moreover, "studies show that terminating an offender's supervision early does not compromise community safety, and it saves a significant amount of judicial resources."  *Id.* at 5 (citations omitted).  Defendant cites further to the AO's Judicial Conference Committee on Criminal Law, whereby early termination of supervision is encouraged in cases where conditions of supervision have been met and "the offender has successfully reintegrated into the community and does not pose a foreseeable risk to public safety in general or to any individual third-party."  Def.'s Mot., ECF No. 5-6 (citations omitted).

The Court notes that Defendant does not address the nature and circumstances of the offense but instead relies on general policy arguments regarding deterrence and public safety and reiterations regarding her good conduct while on probation.  In contrast, the Government focuses on the serious nature and circumstances of the offense, whereby Defendant participated in "an unprecedented riot that threatened the peaceful transfer of power."  Govt. Opp'n, ECF No. 45, at 5.  In the instant case, Defendant flew from Utah to Washington, D.C. to participate in the events on January 6, 2021.  Govt. Sent. Mem., ECF No. 35, at 1.  Defendant remained in the Capitol for approximately 30 minutes; she cheered assaults on law enforcement, and she deleted photographs of the insurrection at the Capitol from her telephone.  Govt. Opp'n, ECF No. 45, at 5.  The sentence imposed by this Court was designed to correspond with the serious nature of the offense and the

circumstances of Defendant's involvement, as well as the need for deterrence and promoting respect for rule of law.   The Government notes also that "with the 2024 elections looming," there is a "need to deter future criminal conduct" and prevent other would-be offenders from engaging in similar conduct. *Id.* Accordingly, the Government concludes, and this Court agrees, that early termination of Defendant's probation would "not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense."  *Id.*  Upon review of the record in this case and considering the applicable §3553(a) factors, the Court finds that such factors weigh against early termination of probation.

### C. Interest of Justice

Defendant argues that the interest of justice supports early termination insofar as "she was on pre-trial supervision for many months prior to being sentenced and has served an additional almost two years of supervision while on probation," and this "lengthy supervision has restricted her liberty."  Def.'s Mot., ECF No. 42, at 7.  The Court notes that "restrictions" of liberty are to be expected when one is being penalized for violating the law.  Defendant mentions (in one sentence) that her split sentence is "unlawful," when considering *Little*, *supra.*, Def.'s Mot., ECF No. 42, at 2, but she does not premise her request for termination on that basis.

The Government asserts, and this Court agrees, that because "the court 'impose[d] a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute],'" granting early termination of probation would "allow defendant to escape the full penalty for her crime, as assessed by the Court."  Govt. Opp'n, ECF No. 45, at 6.  As such, "[t]he interest of justice might arguably disfavor early termination" in this split sentence case "because that would result in the defendant ultimately receiving an amount of punishment less that what the Court initially found appropriate under the §3553(a) factors."  *United States v. Hemphill*,  2024

WL 578977, at *4 ; *accord United States v. Rader*, Case No. 1:22-cr-57-RCL, 2024 WL 474535, at *4 (D.D.C. Feb. 7, 2024) ("Had the Court foreseen the D.C. Circuit's decision in *Little* at the time it sentenced Rader, it would not have imposed a sentence of the same format, but it might have imposed a sentence of equivalent or greater punishment.")   In *United States v. Mathis-Gardner*, 110 F. Supp. 3d 91, 93-94 (D.D.C. 2015), which addressed a request for early termination of supervised release, the court found – that despite defendant's proffer that she had taken dramatic steps to give back to her community since her release from prison – it was not in the interest of justice to grant such motion because of the need for supervised release to serve as punishment and as a general deterrent.

In this case, the Court need not determine the weight of the interest of justice factor as the text of §3564(c) makes it clear that early termination of probation must be warranted by <u>both</u> the interest of justice and the conduct of the defendant, and it must be informed by 3553(a) factors. Accordingly, even if the interest of justice weighs in favor of early termination of probation, that factor alone does not suffice to grant Defendant's motion where the Court has found that the conduct of the Defendant and the Section 3553(a) factors weigh in favor of denying early termination of probation.  Accordingly, it is this 26th day of May 2024,

ORDERED that Defendant's [42] Motion for Early Termination of Probation be DENIED, and it is further

ORDERED that the Court DEFERS to the supervising Probation Office regarding the Return of Defendant's Passport, although Defendant must provide an itinerary to the supervising Probation Office prior to any return of passport.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE